## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN BLUE RIBBON HOLDINGS, LLC, | ) Case No. 20-10161 (LSS) |
| a Delaware limited liability company, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Related to Docket Nos. 12 and 45** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, 503 AND 507 AND FED. R. BANKR. P. 2002, 4001, 6004 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN SENIOR SECURED, SUPERPRIORITY, POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon consideration of the motion [Docket No. 12] (the "**Motion**") of American Blue Ribbon Holdings, LLC, Legendary Baking, LLC, Legendary Baking Holdings, LLC, Legendary Baking of California, LLC, and SVCC, LLC, each as a debtor and debtor in possession (collectively, the "**Debtors**"), pursuant to sections 105, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), seeking entry of the Interim Order (defined below) and entry of this final order (the "**Final Order**"):

        (a)     authorizing the Debtors to obtain post-petition financing pursuant to a senior secured, superpriority debtor-in-possession new money revolving credit facility ("**DIP Facility**") in an aggregate principal amount of up to $20,000,000 on the terms and conditions set forth in the Senior Secured,

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: American Blue Ribbon Holdings, LLC (1224-Del.); Legendary Baking, LLC (2615-Del.); Legendary Baking Holdings, LLC (2790-Del.); Legendary Baking of California, LLC (1760-Del.); and SVCC, LLC (9984-Ariz.). The Debtors' address is 3038 Sidco Drive, Nashville, TN 37204.

Superpriority Debtor-In-Possession Credit Agreement in the form attached as Exhibit B to the Interim Order (and as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**DIP Credit Agreement**")[2], by and among the Debtors and Cannae Holdings, Inc. (in such capacity, and together with its successors and assigns, the "**DIP Lender**");

(b)        authorizing and ratifying on a final basis the Debtors' execution and delivery of the DIP Credit Agreement and other documentation, including security agreements, pledge agreements, mortgages, deeds of trust, guaranties, promissory notes, certificates, instruments, deposit account control agreements and such other documentation which may be necessary or required to implement the DIP Facility and perform thereunder and/or that may be requested by the DIP Lender, in each case, as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Credit Agreement, the "**DIP Credit Documents**"), and the Debtors' incurrence, repayment or payment, as applicable, of all loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fee and upfront fee), costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other amounts due or payable under the DIP Credit Documents, collectively, the "**DIP Obligations**"), and the Debtors' performance of such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(c)        granting to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations, and valid, enforceable, non-avoidable and automatically perfected liens on and security interests in all DIP Collateral (as defined below), pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, to secure the DIP Obligations, in each case as and to the extent, and subject to the relative ranking and priorities (and, in any event, junior to the Administrative Carve-Out), set forth in this Final Order;

---

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings given to them in the DIP Credit Agreement.

(d)    authorizing the Debtors to use proceeds of the DIP Facility, solely in accordance with the Budget and consistent with this Final Order and the DIP Credit Documents;

(e)    vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(f)    approving the waiver by the Debtors of any right to surcharge against the Collateral pursuant to Bankruptcy Code section 506(c) or otherwise; and

(g)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

The Court, having considered the Motion, the terms of the DIP Facility, the DIP Credit Agreement and the declaration filed in support of the Motion, and the evidence submitted at each of the interim hearing held before this Court on January 28, 2020 (the "**Interim Hearing**") and the final hearing held before this Court on February 24, 2020 (the "**Final Hearing**") to consider entry of the Interim Order and this Final Order, respectively, and in accordance with Bankruptcy Rules 2002, 4001(c)(2) and (c)(3), due and proper notice of the Motion, the Interim Hearing and the Final Hearing having been given; and this Court having entered, on January 28, 2020 the *Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, 503 and 507 and Fed. R. Bankr. P. 2002, 4001, 6004 and 9014 (I) Authorizing Debtors to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, (IV) Scheduling Final Hearing, and (V) Granting Related Relief* [Docket No. 45] (the "**Interim Order**") approving the Motion on an interim basis; and the Court having heard and resolved or overruled any objections to the final relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors and an appropriate exercise of the Debtors' business judgment; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, CONCLUDED AS A MATTER OF LAW AND ADJUDGED**, that:

**A.      Petition Date.**

On January 27, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware commencing these Chapter 11 cases (the "**Chapter 11 Cases**").

**B.      Debtors-in-Possession.**

The Debtors are continuing to operate their businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.      Jurisdiction and Venue.**

This Court has jurisdiction over these proceedings, this Motion, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code sections 105, 362, 363, 364, 503 and 507 and Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 2002-1, 4001-2 and 9013-l(m).

**D.      Notice.**

The Debtors have provided due and sufficient notice of the Motion, this Court's entry of the Interim Order, and the Final Hearing. Such notice complies with Bankruptcy Rules 2002 and 4001(c) and Local Rules 2002-1, 4001-2 and 9013-1(m).

**E.      Committee Formation.**

On February 6, 2020, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

**F.      Permitted Prior Liens.**

Nothing herein shall constitute a finding or ruling by the Court that any alleged Permitted Prior Lien or Senior Permitted Lien (as such terms are defined in the DIP Credit Agreement) is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any

party-in-interest, including, but not limited to the Debtors or the DIP Lender, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien or Senior Permitted Lien.

G.     **Need for Postpetition Financing.**

The ability of the Debtors to finance their operations, to preserve and maintain the value of their assets and to maximize the return for all creditors requires the availability of the DIP Facility. In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates, creditors and other stakeholders would occur. Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the DIP Facility.

H.     **No Credit Available on More Favorable Terms.**

The Debtors have been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code. The Debtors have been unable to obtain credit for borrowed money without granting the DIP Liens (defined below), the DIP Superpriority Claims (defined below) and certain other protections set forth herein for the DIP Lender. Moreover, the Debtors were unable to obtain sufficient financing from sources other than the DIP Lender on more favorable terms and conditions than the terms and conditions of the DIP Facility.

I.     **Extension of Financing.**

The DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Credit Documents, subject to (i) the entry of this Final Order, including, among other things, approval of the benefits and protections for the DIP Lender contained herein, (ii) approval of the terms and conditions of the DIP Facility, and (iii) findings by this Court that such financing is essential to the Debtors' estates (and the continued operation of the Debtors), that the DIP

Lender has acted in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to and in connection with this Final Order (and the Interim Order) and the DIP Facility (including the DIP Superpriority Claims and the DIP Liens), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case may be, this Final Order, the Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

**J.     Business Judgment and Good Faith Pursuant to Section 364(e).**

(a)     The Debtors, in consultation with their advisors, concluded that the DIP Facility represents the best available financing under the circumstances. The DIP Credit Agreement and the other DIP Credit Documents were negotiated in good faith among the Debtors and the DIP Lender. The extensions of credit under the DIP Facility, the DIP Credit Agreement and the other DIP Credit Documents are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and consideration.

(b)     All obligations incurred, payments made, and transfers or grants of security set forth in this Final Order, the Interim Order, the DIP Credit Agreement and the other DIP Credit Documents by any Debtor are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

(c)     The credit to be extended under the DIP Credit Agreement, the DIP Facility and the other DIP Credit Documents shall be deemed to be extended by the DIP Lender in good faith and for valid business purposes and uses, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (along with each of its successors and assigns) is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

**K.     Adequacy of the Budget.**

The Debtors have prepared and delivered to the DIP Lender a revised budget, a copy of which is annexed hereto as Exhibit A (as it may be further modified, amended, updated, restated or supplemented

with the consent of the DIP Lender on the terms set forth in the DIP Credit Agreement, the "**Budget**"). The Budget has been thoroughly reviewed by the Debtors and their management. The Debtors and their management believe the Budget and the estimate of administrative expenses due or accruing during the period covered by the Budget were developed using reasonable assumptions, and based on those assumptions the Debtors anticipate that sufficient assets will be available to pay all administrative expenses due or accruing during the period covered by the Budget.

L.    **Relief Essential; Best Interest.**

The relief requested in the Motion (and provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their respective assets and property. It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Credit Agreement and the other DIP Credit Documents, incur the DIP Obligations and grant the liens and claims contemplated in the DIP Credit Agreement, in this Final Order and under the other DIP Credit Documents to the DIP Lender.

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing and the Final Hearing and the declarations submitted in support of the Motion, and with the consent of the Debtors and the DIP Lender, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.    **Motion Granted**. The Motion is hereby granted on a final basis in accordance with the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.    **Authorization of DIP Facility**.

(a)    The DIP Facility and the DIP Credit Documents are hereby approved on a final basis. The Debtors were, by the Interim Order, and are hereby authorized to enter into the DIP Credit

Documents and to pay all DIP Obligations without further order of the Court. The Debtors are hereby authorized to borrow money pursuant to the DIP Credit Documents up to the aggregate amount of the DIP Facility, in accordance with and subject to the Budget and the terms of this Final Order, the Interim Order and the DIP Credit Documents. Any and all actions taken, by the Debtors and the DIP Lender as contemplated by, in accordance with and/or in furtherance of the Interim Order and the DIP Credit Documents are hereby approved and ratified in full as if taken in accordance with this Final Order.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of any DIP Credit Documents), and to pay all fees, that may be required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(i)     The execution, delivery and performance of the DIP Credit Documents, including, without limitation, the creation and perfection of the DIP Liens described and provided for herein;

(ii)     The non-refundable payment to the DIP Lender of the fees referred to in the DIP Credit Agreement and any other DIP Credit Document (which fees, whether paid prior to or after the date hereof, are hereby approved) and costs and expenses as may be due under such DIP Credit Documents from time to time (whether or not contained in the Budget and irrespective of any estimates contained in the Budget), including, without limitation, fees and expenses of the professionals retained by the DIP Lender as and to the extent provided for in the DIP Credit Documents without the necessity of filing retention motions or fee applications (subject to paragraph 17 hereof with respect to the payment of such professional fees and expenses); and

(iii)     The performance of all other acts that may be necessary, required or advisable under or in connection with the DIP Credit Documents.

(c)     The DIP Credit Agreement and the other DIP Credit Documents shall represent, constitute and evidence the DIP Obligations, and the DIP Credit Documents and DIP Obligations shall be

valid and binding, joint and several, obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in any of the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 cases (collectively, the "**Successor Cases**") in accordance with the terms thereof and this Final Order. All obligations incurred, payments made, and transfers or grants of security set forth in the Interim Order, this Final Order, the DIP Credit Agreement or the other DIP Credit Documents by any Debtor are granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. No obligation incurred, payment made, transfer or grant of security set forth in this Final Order, the Interim Order, the DIP Credit Agreement or the other DIP Credit Documents, in each case whether pre- or post-petition, by any Debtor as approved under the Interim Order or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, subordination, setoff, recoupment, counterclaim or any other challenge under the Bankruptcy Code or any applicable non-bankruptcy law, rule or regulation.

3.      **DIP Liens**. Immediately upon the entry of the Interim Order, and effective as of the Petition Date, in order to secure the DIP Obligations, the DIP Lender was granted (and such grant is hereby ratified on a final basis) valid, binding, fully and automatically perfected, continuing, enforceable and non-avoidable liens and security interests (collectively, the "**DIP Liens**") in the DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations. The term "**DIP Collateral**" shall mean all prepetition and postpetition assets and properties (real and personal) of the Debtors, including all "**Collateral**" as defined in the DIP Credit Agreement, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), whether owned by or leased (solely with respect to Debtors' interest therein) from or to, the Debtors, and wherever located including, without limitation, all cash and cash equivalents of the Debtors wherever located, inventory, accounts and accounts receivable, other rights to payment, contracts, instruments, documents

and chattel paper, all securities (whether or not marketable), goods, equipment, inventory and fixtures, all real and leasehold property interests, general intangibles, patents, copyrights, trademarks, trade names and all other intellectual property, capital stock, investment property, all books and records, commercial tort claims and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing; *provided, however*, that the DIP Collateral shall not include (i)  Excluded Property (as defined in the DIP Credit Agreement) and (ii) Debtors' claims and causes of action arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 (collectively, the "**Avoidance Claims**") and the proceeds thereof; *provided, further, however*, that DIP Collateral shall include all proceeds and products of Excluded Property that are not themselves Excluded Property, and with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extend to such leases themselves under this Final Order, except as permitted in the applicable lease, but rather any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination or other disposition of such leases, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds.

4.    **Priority of DIP Liens**. The DIP Liens shall have the following priorities (in each case subject to the Administrative Carve-Out and Senior Permitted Liens):

(a)    pursuant to Section 364(c)(2) of the Bankruptcy Code, a first-priority perfected lien on, and security interest in, all DIP Collateral that is not subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date or subject to a valid lien or security interest in existence on the Petition Date that is perfected subsequent thereto as expressly permitted by Section 546(b) of the Bankruptcy Code (the "**Permitted Prior Liens**"), and

(b)    pursuant to Section 364(c)(3) of the Bankruptcy Code, a junior perfected lien on, and security interest in, all DIP Collateral that is subject to a Permitted Prior Lien, subject to such Permitted Prior Liens.

5.      **DIP Superpriority Claim**.

(a)      Upon the entry of the Interim Order, effective as of the Petition Date, the DIP Lender was granted (and such grant is hereby ratified, confirmed and approved on a final basis) pursuant to section 364(c)(1) of the Bankruptcy Code, against each of the Debtors an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**") for all DIP Obligations, (a) which shall rank junior to the Administrative Carve-Out and (b) with priority over any and all administrative expense claims, unsecured claims and all other claims asserted against the Debtors (without the need to file a proof of claim) or their estates in any of the Chapter 11 Cases or any Successor Cases at any time, now existing or hereafter arising of any kind or nature whatsoever, including all other administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code or applicable non-bankruptcy law, and over any and all other administrative expenses, unsecured or other claims arising under any other provision of the Bankruptcy Code. The DIP Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense claim allowed under section 503(b) of the Bankruptcy Code, and shall be against each Debtor on a joint and several basis. The DIP Superpriority Claim shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

(b)      Except as expressly permitted herein or in the other DIP Credit Documents, the DIP Liens and the DIP Superpriority Claim, as applicable, (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (C) any intercompany or affiliate lien or claim and (D) any liens arising after the Petition Date; and (ii) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code.

6.      **Lien Perfection**. This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, the Debtors shall be authorized to execute and deliver to the DIP Lender all mortgages, deeds of trust, financing statements, security agreements, notices of liens and other similar documents as the DIP Lender may request to grant, preserve, protect and perfect the validity and priority of the DIP Liens; *provided, however*, that notwithstanding anything to the contrary in this Final Order, the DIP Credit Agreement or any other DIP Credit Document, no such filing or recordation shall be necessary or required to perfect the DIP Liens, and no Debtor shall be required to execute or deliver any mortgage or deed of trust, authorize any fixture filing or financing statement, execute or deliver any agreement providing "control" as defined in Section 9-104, 9-105, 9-106 and 9-107 of the UCC as in effect in any relevant jurisdiction or undertake any registration in respect of assets subject to a certificate of title in order to perfect the DIP Liens in any portion of the DIP Collateral, including any and all cash wherever located or held, and all such liens and security interests are hereby deemed fully and automatically perfected. The DIP Lender may, in its sole discretion, file or record, as applicable, such financing statements, mortgages, deeds of trust, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, deeds of trust, security agreements, notices of liens and other similar documents shall be deemed to have been filed or recorded on the Petition Date. The DIP Lender, in its sole discretion, may file a copy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

7.      **Use of Proceeds of DIP Facility**. Subject to the terms and conditions of this Final Order, the Debtors are each authorized to use proceeds of the DIP Facility, solely as provided in the Budget (subject

to the Permitted Variances (as defined in the DIP Credit Agreement)) and this Final Order and for the purposes specified in the DIP Credit Agreement.  The Budget annexed hereto as <u>Exhibit A</u> is hereby approved, provided that nothing in this Final Order or the Budget shall serve to limit or cap the amount of fees described in Paragraph 11(a)(i) of this Final Order.

8.      **Maintenance of DIP Collateral; Insurance**. Unless the DIP Lender otherwise consents in writing, until the Termination Date (as defined in the DIP Credit Agreement), the Debtors shall continue to maintain all property, operational and other insurance as and to the extent required and specified in the DIP Credit Documents. Upon entry of the Interim Order (and as it is hereby ratified, confirmed and approved on a final basis), and to the fullest extent provided by applicable law, the DIP Lender was, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

9.      **Limitations on the Use of Proceeds**. None of the DIP Facility, the loans extended pursuant thereto, the DIP Collateral, proceeds of any of the foregoing, any portion of the Administrative Carve-Out or any other funds may be used, directly or indirectly, by any of the Debtors, any Committee, or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity to do any of the following (nor shall any professional fees, disbursements, costs or expenses be paid in connection therewith): (a) to object to, contest, prevent, hinder, delay or interfere with, in any way, the DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Credit Agreement) occurs; (b) to object to or challenge in any way the DIP Liens, the DIP Obligations or the DIP Collateral; or (c) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse in any material respect to the interests of, the DIP Lender or any of its agents, officers, directors, shareholders, employees, attorneys, advisors, professionals, predecessors in interest, successors and assigns with respect to any transaction, occurrence, omission, action or other matter arising under or in connection with this Final

Order, the Interim Order, the DIP Facility or the DIP Credit Documents, including, without limitation, (A) any Avoidance Claims, (B) any so-called "lender liability" claims and causes of action, (C) any claim or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claim, the DIP Liens or the DIP Credit Documents, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, disallow, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim or the DIP Collateral, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Lender hereunder or under any of the DIP Credit Documents (in each case, including, without limitation, claims, proceedings or actions that have the effect of preventing, hindering or delaying any of the DIP Lender's assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Credit Documents, the Interim Order and this Final Order); *provided*, that notwithstanding the foregoing or anything else to the contrary herein or in the DIP Credit Documents, the Estate Professionals of the Committee may incur fees and expenses in an amount not to exceed $75,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral and the Administrative Carve-Out (the "**Investigation Budget**") to investigate (including by way of formal discovery, if necessary) the prepetition cash management and reimbursement arrangement among the Debtors and their affiliates, including the DIP Lender, but not to initiate, commence, litigate or prosecute any claims against the DIP Lender; *provided*, *further*, that nothing herein impairs the Committee's ability to investigate (including by way of formal discovery, if necessary) any party other than the DIP Lender (and receive compensation therefor), it being understood that the Investigation Budget shall apply solely to the Committee's investigation of the DIP Lender.  The Debtors and the DIP Lender agree to comply promptly in good faith with all reasonable requests for information they receive from the Committee.

10.    **No Further Consents**. To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease (excluding any unexpired non-residential real property lease), loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or

other instrument or agreement that requires the consent of any party or the payment of any fees or

obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant,

mortgage, encumber, sell, assign or otherwise transfer any fee or leasehold interest or the proceeds thereof

or any other DIP Collateral is hereby deemed to be inconsistent with the applicable provisions of the

Bankruptcy Code and shall have no force or effect with respect to the DIP Liens on such leasehold interests

or such other DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor in favor

of the DIP Lender in accordance with the terms of the DIP Credit Documents and this Final Order.  For the

avoidance of doubt, nothing in this Final Order creates any section 1146(a) tax exemption.

      11.    **Carve-Out**.

      (a)    Subject to the terms and conditions contained in this paragraph 11, the DIP Liens

and the DIP Superpriority Claim shall be subject and subordinate to a carve-out (the "**Administrative**

**Carve-Out**"), which shall comprise the following: (i) all fees required to be paid to the Office of the United

States Trustee pursuant to 28 USC §1930(a)(6) and to the Clerk of the Court pursuant to 28 U.S.C. § 156(c);

(ii) all accrued and unpaid professional fees and expenses (the "**Estate Professional Fees**") incurred by the

professionals retained by the Debtors or any Committee pursuant to sections 327, 328, 330, 363 or 1103 of

the Bankruptcy Code (collectively, "**Estate Professionals**") to the extent (x) allowed at any time by the

Court (if required), regardless of whether allowed by interim order, procedural order or otherwise,

(y) incurred or accrued through the date of service by the DIP Lender of a Carve-Out Trigger Notice

(defined below) and (z) up to and as limited by the respective aggregate Budget amounts for each Estate

Professional for the Debtors (as set forth on page 2 of the Budget) and each Estate Professional for the

Committee (as set forth on page 2 of the Budget) or category of Estate Professionals for the Debtors and

category of Estate Professionals for the Committee through the date of service of said Carve-Out Trigger

Notice, *less* the amount of any Prepetition retainers received by such Estate Professionals and not previously

applied to their Estate Professional Fees; (iii) all Estate Professional Fees incurred by the Estate

Professionals for the Debtors from and after the date of service of a Carve-Out Trigger Notice, to the extent

allowed at any time, in an aggregate amount not to exceed $400,000 *less* the remaining amount of

Prepetition retainers received by such Estate Professionals not previously applied to the Estate Professional Fees set forth in clause (ii)(z) above; and (iv) all accrued and unpaid Estate Professional Fees incurred by the Estate Professionals for the Committee from and after the date of service of a Carve-Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $225,000. "**Carve-Out Trigger Notice**" means a written notice by the DIP Lender to lead counsel for the Debtors, the Committee and the United States Trustee stating that an Event of Default has occurred and is continuing.

(b)    Nothing herein or in any of the DIP Credit Documents shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Lender or any other party to object to the allowance and payment of such fees and expenses. The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Subject to the Administrative Carve-Out, nothing in the Interim Order, this Final Order or otherwise shall be construed to obligate the DIP Lender in any way to directly pay compensation to or to reimburse expenses of any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)    For the avoidance of doubt, subject to the Administrative Carve-Out, the DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default, or upon the occurrence of any act, event or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

12.    **Proceeds of Subsequent Financing**. If at any time prior to the Termination Date, the Debtors, the Debtors' estates, any trustee, any examiner or any responsible officer subsequently appointed in the Chapter 11 Cases or the Successor Cases, shall in violation of this Final Order, the DIP Credit Agreement or the other DIP Credit Documents, obtain credit or incur debt pursuant to sections 364(b), (c) or (d) of the Bankruptcy Code, and such financings are secured by any DIP Collateral, then all of the cash

proceeds derived from such credit or debt to the extent of the amount of the DIP Obligations shall immediately be turned over to the DIP Lender for application in accordance with the DIP Credit Agreement or the other DIP Credit Documents.  For the avoidance of doubt, neither the foregoing nor anything in the DIP Credit Documents limits the Debtors' ability to pursue a refinancing that generates sufficient proceeds to repay the DIP Obligations in full.

13.    **Disposition of Collateral**. In addition to those Events of Default set forth in the DIP Credit Agreement, the following shall constitute an "Event of Default" under this Final Order and the DIP Credit Agreement:  the Debtors selling (including, without limitation, any sale and leaseback transaction), transferring (including any assignment of rights), leasing, encumbering or otherwise disposing of any portion of the DIP Collateral, except as expressly permitted by the DIP Credit Agreement or the other DIP Credit Documents. For the avoidance of doubt, neither the foregoing nor anything in the DIP Credit Documents limits the Debtors' ability to pursue a transaction that generates sufficient proceeds to repay the DIP Obligations in full.

14.    **Rights and Remedies Upon Event of Default; Modification of Automatic Stay**.

(a)    Any automatic stay otherwise applicable to the DIP Lender, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified, to the extent necessary to permit the DIP Lender, upon the occurrence and during the continuation of an Event of Default, and upon five (5) business days' prior written notice of such occurrence (the "**Remedies Notice Period**"), in each case given to the Debtors, their counsel, counsel for the Committee, and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in this Final Order, any of the DIP Credit Documents or applicable law, including, without limitation, (i) declare the termination of the revolving commitment under the DIP Facility to the extent any such commitment then remains, (ii) declare all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtors, (iii) increase the rate of interest applicable to the DIP Obligations to the default rate specified in the DIP Credit Agreement, (iv) terminate the DIP Credit Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP

Liens or the DIP Obligations of any Debtor, (v) otherwise enforce any and all rights against the DIP Collateral under the DIP Credit Documents and (vi) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Credit Documents or applicable law. If neither the Debtors nor the Committee contest the right of the DIP Lender to exercise its rights and remedies within the Remedies Notice Period, or if an emergency hearing is held that does not result in the Court preventing the DIP Lender from exercising its rights and remedies, then the automatic stay, as to the DIP Lender, shall automatically terminate at the end of the Remedies Notice Period. Notwithstanding anything to the contrary in this Final Order or the DIP Credit Documents, the rights of the DIP Lender to enter onto the Debtors' leased premises shall be limited to: (i) any such rights agreed to in writing by the applicable landlord in favor of the DIP Lender or its designee (including, without limitation, in the governing lease agreement itself or in any landlord waiver or similar agreement); (ii) any rights that the DIP Lender has under applicable non-bankruptcy law, if any; or (iii) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

(b)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order as necessary to permit (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claim, (b) the Debtors to incur all DIP Obligations and pay all fees, costs and expenses under the DIP Credit Agreement and the other DIP Credit Documents, and (c) the implementation of all of the terms, rights, benefits, privileges and remedies of this Final Order and the DIP Credit Documents, in each case, without further notice, hearing or order of the Court.

15.     **Proof of Claim**. The DIP Lender shall not be required to file a proof of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed in this Final Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Lender is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in each of the Chapter 11 Cases or any Successor Cases for any claim allowed in this Final Order; for

avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as a separate proof of claim against each Debtor. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Lender.

16.    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order**. The DIP Lender has acted in good faith in connection with the DIP Facility, and its reliance upon this Final Order is in good faith. Based on the findings set forth in the Interim Order, this Final Order and the record made at the Interim Hearing and the Final Hearing, the DIP Lender is entitled to all the protections and benefits provided by section 364(e) of the Bankruptcy Code.

17.    **Expenses**. The Debtors are authorized to pay all prepetition and postpetition fees, costs, disbursement and expenses of the DIP Lender that are payable by Debtors in accordance with the DIP Credit Documents and this Final Order.  Payment of such fees shall not be subject to allowance by this Court; *provided*, *however*, the U.S. Trustee or counsel for the Committee may seek a determination by this Court whether such fees and expenses are reasonable in the manner set forth below. Within one (1) business day of receipt, the Debtors shall provide to the U.S. Trustee and the lead counsel of the Committee a copy of any invoices received from the DIP Lender for professional fees and expenses during the pendency of the Chapter 11 Cases. Each such invoice shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential, or sensitive information). If the U.S. Trustee or the Committee objects to the reasonableness of the invoices submitted by the DIP Lender, and the parties cannot resolve such objection within ten (10) calendar days of receipt of such invoices, the U.S. Trustee or such Committee, as the case may be, shall file with the Court and serve on the applicable DIP Lender an objection (a "Fee Objection") limited to the issue of reasonableness of such fees and expenses. The Debtors shall promptly pay, and/or the DIP Lender (as applicable) is hereby authorized to make an advance under the DIP Facility to timely pay, the submitted invoices after the expiration of the ten (10) calendar day notice period if no Fee Objection

is received in such ten (10) calendar day period. If a Fee Objection is timely received, the Debtors shall promptly pay, and/or the DIP Lender (as applicable) is hereby authorized to make an advance under the DIP Facility to timely pay, the undisputed amount only of the invoice(s) that is the subject of such Fee Objection, and the Court shall have jurisdiction to determine the disputed portion of such invoice(s) if the parties are unable to resolve the Fee Objection.  Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Lender incurred on or prior to such date to the extent payable in accordance with the terms of the DIP Credit Agreement.

18.    **Indemnification**. The Debtors are authorized to indemnify and hold harmless the DIP Lender and each of the Indemnitees (as defined in the DIP Credit Agreement) in accordance with and subject to the terms and conditions of the DIP Credit Agreement, *except* that the definition therein of "Indemnitee" is revised to exclude "Affiliates".

19.    **Binding Effect**. The provisions of this Final Order shall be binding upon and inure to the benefit of the Debtors, the DIP Lender and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), any and all creditors of the Debtors, any Committee and any other parties in interests and each of their respective successors and assigns, whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

20.    **Section 506(c) Waiver; No Marshalling**. Except to the extent of the Administrative Carve Out, no expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from the DIP Collateral pursuant to Bankruptcy Code section 506(c), the enhancement of collateral provisions of Bankruptcy Code section 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Lender, and no consent shall be implied from any action, inaction or acquiescence by the DIP Lender. In no event shall the DIP Lender be subject to (i) the "equities of the case" exception contained in

Bankruptcy Code section 552(b) or (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral.

21.    **Right to Credit Bid**. Subject to the terms and conditions of the DIP Credit Documents, the DIP Lender shall have the unqualified right to "credit bid" up to the full amount of the outstanding DIP Obligations in connection with any sale or other disposition of all or any portion of the DIP Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

22.    **Amendments; Notices**. Notwithstanding anything contained herein to the contrary, no amendment, modification or supplement of any of the DIP Credit Documents shall be effective unless in writing and in accordance with the applicable DIP Credit Documents. Subject to the terms and conditions of the applicable DIP Credit Documents, the Debtors and the DIP Lender may make any nonmaterial amendment, modification or supplement of any provision of the DIP Credit Agreement or the other DIP Credit Documents, and the Debtors are authorized to enter into any such amendment, modification, supplement or waiver, without further notice to or approval of the Court.  The Debtors shall provide counsel for the Committee with notice of any such amendment, modification, supplement or waiver and of any amendment to the Budget. In the case of any material amendment, modification, or supplement to the DIP Credit Documents that is adverse to the Debtors (a "**Material Amendment**"), the Debtors shall file such Material Amendment on the docket of these Cases and provide notice (which may be provided via electronic mail or other electronic means) to counsel to the Committee and to the United States Trustee, along with counsel to the DIP Lender, each of whom shall have five (5) business days from the date of receipt of such notice to object in writing to such Material Amendment. If no objections are timely received (or if the such parties indicate via electronic mail that they have no objection) to the Material Amendment, the Debtors may proceed to execute the Material Amendment, which shall become effective immediately upon execution. If the Committee or the U.S. Trustee timely objects to any Material Amendment, such Material Amendment shall only be permitted pursuant to an order of this Court.  Concurrently with their transmission to the DIP Lender, the Debtors shall provide to counsel for the Committee copies of all notices delivered

to the DIP Lender pursuant to this Final Order or the DIP Credit Documents, including without limitation, copies of each Funding Notice.

23.    **Priority of Terms**. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Credit Documents, the Interim Order, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as set forth in" any of the DIP Credit Documents, the terms and provisions of this Final Order shall govern.

24.    **Survival of Final Order**. The provisions of this Final Order and any actions taken pursuant hereto shall survive and shall not be modified, impaired or discharged by entry of any order which may be entered (i) confirming any Chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions of this Final Order, including the DIP Liens, DIP Superpriority Claim, and other rights, privileges, benefits and protections afforded herein and in the DIP Credit Documents to the DIP Lender shall continue in full force and effect notwithstanding the entry of such order, and shall maintain their respective priorities as provided by this Final Order, the DIP Credit Agreement and the other DIP Credit Documents (as the case may be) until the payment in full of the DIP Obligations, and this Court shall retain jurisdiction, notwithstanding dismissal of any of the Chapter 11 Cases, for the purposes of enforcing the foregoing to the extent permitted by applicable law.

25.    **Enforceability**. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

26.    **Waiver of Any Applicable Stay**. This Final Order shall be effective immediately and enforceable upon its entry, notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3), 6004 or any other Bankruptcy Rule.

27.    **Discharge**. The DIP Obligations shall not be discharged by the entry of an order confirming any plan in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan, or the DIP Lender has otherwise agreed in writing.

28.    **Retention of Jurisdiction**. The Court has and will retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

**Dated: February 24th, 2020**
**Wilmington, Delaware**